## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**DELBERT EATON,**

      **Plaintiff,**

      **v.**                           **No._____**

**THE UNITED STATES OF AMERICA,**

      **Defendant.**

## COMPLAINT UNDER THE FEDERAL TORT CLAIMS ACT
## FOR DAMAGES CAUSED BY NEGLIGENCE

Plaintiff, Delbert Eaton, avers for his complaint the following:

1.      Plaintiff brings this civil action for compensatory damages arising from the negligence of personnel at the Northern Navajo Medical Center ("NNMC") located in Shiprock, New Mexico, a facility operated by the United States and the Indian Health Service.

## JURISDICTION AND VENUE UNDER THE FEDERAL TORT CLAIMS ACT

2.      Plaintiff's claims in this action are authorized by and are brought pursuant to the provisions of the Federal Tort Claims Act (FTCA), 28 U.S.C. §1346(b) and 28 U.S.C. §2671, *et seq.*, and also pursuant to 28 U.S.C. §1331.

3.      Federal statutes, including the FTCA, vest this court with exclusive jurisdiction over plaintiff's claims in this case.

4.      The FTCA makes the United States liable for the negligent acts and omissions of federal "employees."

5.      Federal employees include, but are not limited to, employees of the Indian Health Service and the Northern Navajo Medical Center ("NNMC").

6.      At all times material to this case defendant United States controlled, owned, and operated NNMC.

7.      NNMC provides medical care to Native Americans who are members of recognized tribes pursuant to various federal statutes and other law.

8.      At all times material to this case defendant United States, acting through the Indian Health Service, held itself out to have the ability to provide medical care to members of the Navajo Nation and plaintiff at NNMC, including the ability to perform surgery.

9.      Plaintiff presented to the Department of Health and Human Services in October, 2013, a timely administrative claim under the FTCA alleging negligence by federal employees at NNMC in the provision of medical care to plaintiff. Plaintiff's claim was acknowledged by the Department of Health and Human Services on October 21, 2013.

10.     Defendant has had more than six months to investigate plaintiff's claim and to attempt settlement with plaintiff.

11.     By law, a claim presented under the FTCA is deemed denied by the United States six months after it is presented, and plaintiff is then authorized to file a lawsuit against the United States.

12.     Plaintiff's federal tort claim has not been denied by the United States as of the date of this Complaint.

13.     Plaintiff has now exhausted his administrative remedies as required by the FTCA.

14.     Plaintiff is authorized by statute to file this action in the United States District Court for the District of New Mexico.

15.     Plaintiff is a tribal member of the Navajo Nation. At all times material hereto, he resided near Red Valley, Arizona.

16.     Venue is proper in this district under 28 U.S.C. §1402(b).

## FACTUAL BACKGROUND

17.     On or about April 1, 2013, plaintiff underwent a routine day surgery at NNMC known as Esophagogastroduodenoscopy or EGD.

18.     The primary reason for plaintiff's surgery was to evaluate him for acid reflux.

19.     During the surgery preparation, operating room nurse, Thomas Hlebasko, placed a rubber tourniquet on plaintiff's left upper arm to start an IV, and then never removed the tourniquet.

20.     Registered nurse Joanne Watchman took plaintiff into the EGD procedure room and instructed plaintiff to lay on his left side, directly onto his left arm with the rubber tourniquet.

21.     After the surgery, Joni Pace, a registered nurse in the post-anesthesia care unit, discovered and removed the rubber tourniquet from plaintiff's left arm.

22.     Removal of the tourniquet post operatively allowed trapped IV fluid containing anesthesia to be released into plaintiff's system causing him to be drowsy again. Plaintiff was later discharged.

23.     Prior to his discharge, plaintiff's left arm, wrist, and hand were never examined by staff at NNMC.

24.     Plaintiff slept for many hours after returning home after his surgery, but began to notice his left arm and hand were numb, tingling, and generally felt bad.

25.     The next day (April 2, 2013), plaintiff, an employee of NNMC went to work and reported to operating room nurse Thomas Hlebasko what was happening to his arm. Nurse Hlebasko instructed plaintiff to "keep an eye on it."

26.     Plaintiff contacted Vickie Morez-Walser, the supervisory nurse for surgery services, at the same time he contacted nurse Thomas Hlebasko. Plaintiff told Ms. Morez-Walser that his left arm and hand were numb, tingling, and generally felt bad.

27.     Ms. Morez-Walser instructed plaintiff to fill out forms that any employee would normally fill out when injured on the job. Plaintiff explained to Ms. Morez-Walser that his injuries did not occur while on the job, but instead while he was a patient at NNMC. Ms. Morez-Walser still insisted, and even coerced, plaintiff to file a false workman's compensation claim for his surgical related injuries.

28.     At Ms. Morez-Walser's request, Dr. Franklin Wolf performed a cursory examination of plaintiff's left arm, wrist, and hand, and then excused plaintiff from work.

29.     On or about April 2, 2013, plaintiff filed an electronic Incident Report with the Indian Health Services to complain about the tourniquet having been left on his left arm too long during his April 1, 2013 EGD procedure at NNMC (Incident Report Control No: 2013-785A67 attached hereto as Exhibit 1).

30.     Plaintiff met with his primary care physician, Robert Ryan Johnson, DO, on April 4, 2013, with complaints of numbness to his left arm, hand, and knee down to his foot, related to his April 1st EGD procedure. Dr. Johnson examined plaintiff, gave him a referral to physical therapy, and excused plaintiff from work until April 12, 2013.

31.     On or about April 5, 2013, Plaintiff filed a formal complaint with NNMC pertaining to his April 1, 2013 operating room visit. The formal complaint was received by Rosanna Bluehorse, BSBM, patient advocate, and then routed to Vickie Morez-Walser, RN, BSN, the operating department supervisor, and Sue Ann Nichols, risk manager, for review.

32.     Plaintiff received correspondence from Rosanna Bluehorse, BSBM, patient advocate, dated April 16, 2013, acknowledging receipt of plaintiff's complaint concerning the tourniquet that was left on his left arm during the EGD.

33.     Plaintiff presented to the NNMC urgent care on April 26, 2013 to follow up on his left forearm/hand numbness and weakness. Treating physician, Heather Linder, M.D., gave plaintiff a referral to neurology for an Electromyography (EMG) procedure. EMG is a diagnostic procedure used to assess the health of muscles and the nerve cells that control them.

34.     While waiting for an appointment with neurology, plaintiff completed three prescribed physical therapy appointments between April 30, 2013 and June 4, 2013, and still continued to have a combination of pain, numbness, tingling, and weakness in his left arm, wrist, hand, and fingers.

35.     On June 6, 2013 plaintiff met with primary care physician, Heather Linder, M.D. to follow up on his continued left forearm/hand numbness and weakness, and to his still pending neurology appointment. Dr. Linder spoke with Dr. Gordon at NNMC's neurology department about moving plaintiff up on the appointment list. Dr. Gordon relayed to Dr. Linder that he would arrange an EMG for plaintiff, but he suspected a

conduction deficit and not an axonal loss, so plaintiff should continue to see slow improvement of his condition over the next six months.

36.     Plaintiff completed a fourth physical therapy appointment on June 26, 2014, and although plaintiff reported an increase in his previously noted "funny feeling", he was discharged from physical therapy.

37.     On July 16, 2013, NNMC's operating room supervisor, Vickie Morez-Walser, RN, BSN, responded by letter to plaintiff's complaint dated April 5, 2013. In her response she states the following: "From reviewing the chart, the care provided was compromised. Please be assured that the complaint was addressed with the employee, Thomas, as indicated in your complaint letter." (Exhibit 2, correspondence from the Department of Health & Human Services dated July 16, 2013.)

38.     Plaintiff finally met with Dr. Paul Gordon of NNMC's neurology department on August 13, 2013. During that visit, plaintiff underwent an EMG procedure, and it revealed left median neuropathy, non-localized, axon loss in type, mild in degree, and no definite stigmata of tourniquet palsy. Dr. Gordon instructed plaintiff to continue exercising.

39. Plaintiff has continued with prescribed physical therapy, and he still continues to have a combination of pain, numbness, tingling, and weakness in his left arm, wrist, hand, and fingers associated with the incident on April 1, 2013 at NNMC.

40. Plaintiff owns a small ranch and is employed at NNMC in the maintenance department as a utility system repair operator. Both plaintiff's home duties and his job duties require him to use his hands, arms, and legs.

41.     As a result of the injuries plaintiff has suffered, he has had to miss work and use his vacation and/or sick days to make up his lost time.

## **CAUSE OF ACTION - DUTY, NEGLIGENCE, & CAUSATION**

42.     Plaintiff repeats the averments stated in the preceding paragraphs and incorporates them by reference as part of this count.

43.     The United States is legally responsible for the negligent actions of its employees, including employees of NNMC, while those employees are performing job duties for the employer or engaged in furtherance of the interests of the employer.

44.     The involved staff who participated in the surgery performed on plaintiff at NNMC were employees of the Indian Health Service at the time of plaintiff's EGD surgery.

45.     Those employees at NNMC were on the job performing job-related duties at the time they caused plaintiff's injury.

46.     The United States is liable for the negligent acts and omissions of NNMC staff in their handling of plaintiff's care while he was a patient at NNMC, including leading up to, during, and after his surgery on April 1, 2013.

47.     The involved staff at NNMC had a duty to exercise reasonable care and to possess and use the degree of skill and learning ordinarily used in the same or similar circumstances by members of their professions in the provision of healthcare.

48.     The involved staff at NNMC breached their duty of reasonable care owed to plaintiff and is guilty of the following negligent actions and omissions by failing to measure up to the applicable standards of care, skill, and practice required of members of their professions, to wit:

a)      during the EGD surgery carelessly damaging plaintiff's left arm by failing to timely remove a rubber tourniquet;

b)      failing to adhere to the proper standards and procedures for IV placement and medication administration, pre-operatively and intra-operatively;

c)      failing to use a brighter colored rubber tourniquet band that could be easily seen/identified by NNMC staff prior to and/or during the surgery;

d)      failure by the surgeon to adequately monitor surgical staff assigned to plaintiff's procedure;

e)      failing during surgery and post-operatively, and in the days subsequent to the surgery, to identify and repair in a timely manner the injury caused to plaintiff;

f)      negligently failing to identify the tourniquet on plaintiff's arm during the surgery;

g)      coercing plaintiff into filing a false workman's compensation claim;

h)      negligently and carelessly failing to measure up to the requisite standards of care and skill required and observed in the field of medicine and related fields while performing or engaged in surgery, and in further particulars that at this time are not known to plaintiff as to the specific facts, but which are believed and hereby alleged will be disclosed during discovery in the course of the litigation.

49.   The negligent actions and omissions of employees of the United States in failing safely and properly to provide plaintiff with surgical and medical care at NNMC on and about April 1, 2013, caused injury and were actions and omissions for which the United States would be liable to plaintiff for negligence under the laws of the State of

8

New Mexico, the place where the incident occurred, if the United States were a private individual guilty of the same negligence.

50.     At all times material hereto, plaintiff was a patient of the Indian Health Service, an agency of the United States Department of Health & Human Services, and was in the care and custody of NNMC and involved staff, dependent upon the government, the hospital, and the hospital staff for his safety and medical care.

51.     Defendant United States, acting through its employees, negligently failed to provide appropriate, reasonable, and safe medical care for plaintiff Eaton, which gives rise to a negligence cause of action against defendant, as laid out herein.

52.     As a direct and proximate result of the negligence of defendant United States and its employees, Mr. Eaton suffered serious injury and harm.

53.     Additionally, Ms. Vickie Morez-Walser coerced plaintiff into filing a false workman's compensation claim indicating he was injured on the job even though Mr. Eaton clearly informed Ms. Morez-Walser that he was on leave as a patient at NNMC when the incident occurred. Ms. Morez-Walser's coercion appears to be a methodical cover up on the hospital's part.

## DAMAGES

54.     Under the FTCA and the law of the place of the wrong, the State of New Mexico, plaintiff is entitled to compensatory damages for his losses, both special and general, including nature, duration, and extent of injury, past and future medical expense, loss of earning capacity, non-medical expense incidental to his injuries, emotional distress and suffering, physical pain, a loss of enjoyment of life, loss of household services, disfigurement and scarring, mental anguish, exacerbation to his

preexisting PTSD condition, and future damages caused by the negligence of the United States. Defendant United States is liable to plaintiff for her losses and she hereby claims a right to recover all allowable damages recognized by New Mexico law, whether specifically mentioned herein or not.

## **CONCLUSION**

**WHEREFORE,** plaintiff prays the court to enter judgment for him and to order that he be compensated for all losses allowed or recognized by law, for an award of allowable costs, and for such other relief as the court adjudges proper under the laws and rules that govern this case.

BARBER & BORG, LLC
P.O. Box 30745
Albuquerque, NM 87190-0745
3816 Carlisle Blvd, NE Suite C (87107)
(505) 884-0004
(505) 884-0077 (fax)
Email: scott@barberborg.com

By_____ */s/ Scott E. Borg*
ATTORNEYS FOR PLAINTIFF